NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DERRICK HARMON,                    :
                                   :    Civil Action
                Plaintiff,         :    06-4555 (SDW)
                                   :
          v.                       :    O P I N I O N
                                   :
SERGEANT S. DAVIS, et al.,         :
                                   :
                Defendants.        :

APPEARANCES:

    DERRICK HARMON, Plaintiff pro se
    #440373
    Northern State Prison
    Newark, New Jersey 07114

SUSAN D. WIGENTON, District Judge

Plaintiff DERRICK HARMON (hereinafter "Plaintiff") currently confined at Northern State Prison, Newark, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998) and his complaint (hereinafter "Complaint"). Plaintiff's Complaint alleges that, on August 8, 2006, Sergeant Davis "acted out of the lines of his duty

Page -1-

causing [Plaintiff] injury . . . and depriving [Plaintiff] of property"; Compl. at 3, while Officer Williams' conduct was "excessive and brutal causing [Plaintiff] injury [and] depriving [Plaintiff] of property." Id. at 4. Plaintiff clarifies that (1) "Officers [have] been disrespecting [Plaintiff] ever since [Plaintiff] been lock[ed]-up"; and (2) on August 8, 2006,

> Officer Williams was giving breakfast out and the whole prison was on lock[-]down[,] and the prisoners were being deprived of showers, so [Plaintiff] and [another inmate referred to by Plaintiff as] brother [were] talking about [their] situation[,] and Officer Williams invaded [their] conversation and made it his business to violate [their] freedom of speech by telling [them] to shut-up[,] and all [Plaintiff] said to the brother [was] "Did you hear that, first we can't get showers and now we can't talk." Officer Williams went and got [Sergeants] Davis[,] Daniels[,] Scott and Nealis and told [Plaintiff] to put [Plaintiff's] hands out the bars, and [Plaintiff, in response,] said[,] "For what[?"] Because the whole reason to pull [Plaintiff] out [of Plaintiff's] room to [use] excessive force and police brutality[,] and on top of that[,] Sergeant Davis [did] not give [Plaintiff] an explanation [in response to Plaintiff's question] which mean[t that Sergeant Davis'] conduct . . . was oppressive and the act of them initiating and jumping [Plaintiff,] and falsely l[y]ing on reports.

Id. at 6-7. Without specifying the allegedly wrongful actions undertaken by Officers Daniels, Scott and Nealis, Plaintiff defines these officers as "oppressors C.O.'s," id. at 5, and seeks compensatory damages of $400 billion dollars and punitive damages of $200 billion dollars, plus compensation for Plaintiff's pain and suffering. Id. at 8. Plaintiff also requests the Court to subpoena the "electromagnetic tape of [Plaintiff's] aura audio." Id. at 7.

Page -2-

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to

state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## DISCUSSION

Liberally construing the Plaintiff's Complaint, this Court reads it as asserting violations of the Cruel and Unusual Punishments Clause of the Eighth Amendment by the Defendants' acts of verbal harassment and usage of excessive force, and as a violation of Plaintiff's Fourteenth Amendment due process right by Defendants' taking of Plaintiff's property. See generally, Compl.

### I. Verbal Harassment

It is well settled that acts of harassment do not qualify as violations of the Eighth Amendment. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983" if the

harassment is not accompanied by a physical injury) (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("'[M]ere verbal harassment does not give rise to a constitutional violation.' For example, . . . discriminatory statements, . . . slurs and epithets, while inexcusable and offensive, do not establish liability under section 1983, because they do not amount to a constitutional violation. . . . '[The] acts [that are] nothing more than threats and verbal taunts do not violate the Eighth Amendment'") (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . derogatory language, verbal harassment, or threats standing alone do not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); cf. Young v. Coughlin, 1998 U.S. Dist. LEXIS 764, at *19-22 (S.D.N.Y. Jan. 27, 1998) (neither suggestive comments nor the acts of staring qualify as violations of the

Eighth Amendment). Therefore, this Court finds that the harassment of Plaintiff, assuming it occurred, could not rise to the level of a constitutional violation actionable under Section 1983.

## II. Excessive Force

Plaintiff also appears to assert usage of excessive force by Defendants. The landmark Supreme Court case in the Eighth Amendment excessive force area is Hudson v. McMillian, 503 U.S. 1 (1992). The Hudson Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim. See id. at 22-23 (Thomas, J., dissenting) ("In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . Ascertaining prison officials' state of mind, in other words, is the only relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the

Court asserts, is the unnecessary and wanton infliction of pain. This formulation has the advantage, from the Court's perspective, of eliminating the objective component") (citations and quotation marks omitted); Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . ., the latter kind of claim has no such requirement").

Accordingly, to establish an Eighth Amendment excessive force claim, the plaintiff must adduce evidence that the force used was applied not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm. However, the de minimis use of force, which is itself not repugnant to human decency, cannot state an Eighth Amendment claim of excessive force. See, e.g., Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (internal citation and quotation marks omitted).

Here, Plaintiff asserts that the events at issue took place in response to the disturbance that Plaintiff created by arguing with

Defendants during the lock-down and by refusing to comply with Defendants' orders aiming to restore discipline in the facility. See Compl. at 6-7. According to the Complaint, Defendants' sole response to the disturbance was limited to the act of Sergeant Davis' "jumping" onto Plaintiff. Id. The facts, as alleged by Plaintiff, indicate that the measure taken by Defendants was (1) executed for a legitimate penological purpose of restoring order and discipline in the prison; and (2) a de minimis force commonly used to restrain inmates and a justified response to Plaintiff's refusal to cooperate with the Officers' orders. Therefore, the physical actions by Defendants, assuming that such actions took place, cannot qualify as an excessive force violating Plaintiff's constitutional rights. Compare Johnson v. Terhune, 2006 U.S. Dist. LEXIS 12414 (E.D. Cal. Mar. 6, 2006) (officers' jumping on the inmate could qualify as excessive force if the inmate was not resisting the disciplinary measures applied to the inmate but rather was following the orders given).

### III. Deprivation of Property

Plaintiff also maintains that he was deprived of a certain property, although Plaintiff does not clarify what particular property Plaintiff was deprived of. See generally, Compl.

The Due Process Clause prohibits a state or local government entity from depriving a person of property without due process of

law. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). To analyze a due process claim, a Court conducts a familiar two-part inquiry: a Court determines whether the plaintiff "was deprived of a protected interest, and if so, what process was his due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983). However, a property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856. The New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government. See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's due process claim regarding the confiscation of

property fails.[1]

## CONCLUSION

Based on the foregoing, the Court grants Plaintiff's application to file the Complaint without prepayment of the filing fee and dismisses the Complaint without prejudice for failure to state a claim upon which relief may be granted.

An appropriate Order accompanies this Opinion.

                                                SUSAN D. WIGENTON
                                                United States District Judge

Dated: November 15, 2006

---

[1] To the extent that Plaintiff seeks to assert claims arising under state law, the Court declines to exercise supplemental jurisdiction over these claims. See 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Del. County, Pa., 983 F.2d 1277, 1284-85 (3d Cir. 1993).